IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JESSIE G. BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV253 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jessie G. Bowman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum), Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of December 31, 2011. (Tr. 225-36.) Upon denial of those applications initially (Tr. 66-91, 128-33) and on reconsideration (Tr. 92-127, 138-55), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 156). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-65.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 12, 333-34), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2011, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; chronic obstructive pulmonary disease (COPD); major depressive disorder; and panic disorder with anxiety.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except [Plaintiff] can frequently climb ramps or stairs, balance, stoop, kneel, crawl or crouch. [Plaintiff] cannot climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards, dust, fumes, gases, poor ventilation and extremes of heat, which should be no more than frequent. Mentally, [Plaintiff] can perform simple, routine tasks with no interaction with the public and only occasional contact with coworkers and supervisors. She also can adapt to routine changes in the work environment.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from December 31, 2011, through the date of this decision.

(Tr. 18-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to properly account for [Plaintiff's] moderate limitations in concentration, persistence, or pace [("CPP")] in [the] RFC is harmful error" (Docket Entry 12 at 6 (bold font omitted); and

2) "[t]he ALJ failed to identify the apparent conflict between the VE's testimony [that Plaintiff could perform the job of Caretaker] and the [Dictionary of Occupational Titles ('DOT')] listing for the position of Caretaker" and failed to account for the fact that the DOT "indicates that the position of Change House Attendant is an occupation 'concerned with serving clients of checkrooms, locker rooms, or rest rooms' which suggests that these job duties would require interaction with the public" (id. at 5 n.1).[6]

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 5-8.)

---

[5] (...continued)
review does not proceed to the next step.").

[6] Plaintiff presented this argument in a footnote within a preliminary, non-argumentative portion of her brief entitled, "The [SEP] and the ALJ's Decision" (Docket Entry 12 at 3 (underlining omitted)), and omitted it from the "Issues Presented" and the "Argument" sections of her brief (see id. at 6 (full capitalization omitted)). Such circumstances suggest that Plaintiff did not intend to raise this matter as an issue for judicial review. Nevertheless, the Court should accord Plaintiff the benefit of the doubt and discuss the merits.

## 1. CPP

In Plaintiff's first issue on review, she faults the ALJ for "fail[ing] to properly account for [Plaintiff's] moderate limitations in CPP in [the] RFC." (Docket Entry 12 at 6 (bold font omitted).) In particular, Plaintiff alleges that the RFC's "limitation 'to simple, routine tasks' (Tr. 21) addresses [Plaintiff's] ability to understand a work task but not her ability to stay on task." (Docket Entry 12 at 6.) According to Plaintiff, the United States Court of Appeals for the Fourth Circuit "indicated its agreement with 'other circuits that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work'" (id. at 7 (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks omitted))), because "'the ability to perform simple tasks differs from the ability to stay on task . . . [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP]'" (id. at 9 (internal bracketed language omitted) (quoting Mascio, 780 F.3d at 638)). Plaintiff contends that "[t]he ALJ's error is especially important in light of evidence regarding [Plaintiff's] difficulty with focus and concentration," including her "testi[mony] that she lost her previous job since she 'could not perform production as fast as [the employer] needed.'" (Id. (quoting Tr. 39, and citing Tr. 363-

64, 829, 837, 842-43, 852).) Plaintiff's contentions do not warrant relief.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Recommendation adopted by District Judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why a limitation in the RFC to "simple, routine tasks" (Tr. 21) sufficiently accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ discussed Plaintiff's statements and testimony regarding her mental symptoms (see Tr. 20, 21), but concluded that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (Tr. 23).

10

Plaintiff does not challenge the ALJ's evaluation of Plaintiff's subjective complaints. (See Docket Entry 12.)

Second, the ALJ summarized Plaintiff's mental health treatment (see Tr. 23), making the following, pertinent observations:

- Plaintiff's "mental health record is primarily pharmacotherapy from her primary care provider . . . to treat her depression and anxiety" (id.; see also Tr. 677-729);

- During Plaintiff's treatment sessions at PQA Healthcare between July 2012 and February 2013, Plaintiff "told her clinician that Xanax helped control her symptoms," and "[m]ental status examinations indicated that [Plaintiff] had intact memory and attention" (Tr. 23; see also Tr. 360-64);

- Plaintiff "did not receive mental health therapy" between February 2013 and March 2015 (Tr. 23); and

- In June 2015, Plaintiff reported to her psychiatrist "that the Cymbalta helped, though she felt that she needed an increased dose" (id.; see also Tr. 829).

Plaintiff does not challenge the ALJ's summarization of Plaintiff's mental health treatment history. (See Docket Entry 12.)

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 24-25.) Notably, the ALJ gave "great weight" to the state agency psychological consultants' opinions, which included their conclusion that, despite moderate deficit in CPP (see Tr. 73, 85, 102, 119), Claimant remained able to "maintain concentration long enough to complete a simple task as would be required of unskilled work" (Tr. 77, 89 (emphasis added); see also Tr. 107, 124 (opining

11

that Plaintiff "has the ability to <u>maintain concentration and attention for an adequate period to complete short and simple tasks</u>" (emphasis added))). (Tr. 24, 25.) The ALJ's crediting of the state agency psychological consultants' conclusions that Plaintiff remained able to <u>maintain</u> attention and concentration to complete simple, routine tasks provides "an accurate and logical bridge," <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000), between the evidence and the ALJ's findings, see <u>Able v. Colvin</u>, No. 1:14CV1078, 2016 WL 1229086, at *5 (M.D.N.C. Mar. 28, 2016) (unpublished) (Osteen, C.J.) (holding ALJ "adequately explained" why limitation to simple tasks encompassed moderate deficit in CPP where ALJ gave "significant weight" to state agency consultant's opinion that, despite such deficit, the claimant could sustain attention and concentration for simple tasks); <u>Del Vecchio v. Colvin</u>, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in <u>Mascio</u>, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any additional restrictions. . . . Therefore, the [c]ourt is not left to guess at the ALJ's decision-making process.").

12

Under these circumstances, the ALJ adequately explained why limitations to "simple, routine tasks" (Tr. 21) sufficiently accounted for Plaintiff's moderate limitation in CPP.

**2. Conflict Between VE's Testimony and the <u>DOT</u>**

Plaintiff contends that the ALJ "failed to identify and resolve the apparent conflicts between the ALJ's RFC and the VE's testimony that [Plaintiff] could perform the jobs of Caretaker and Change House Attendant." (Docket Entry 12 at 5 n.1.) More specifically, Plaintiff asserts that the <u>DOT</u> describes the position of Caretaker as involving cleaning, dusting, shoveling coal and ashes, washing windows, removing and hanging draperies, and painting exterior structures, which "suggest[s] more than frequent exposure to dust, fumes, [and/or] gases and the performance of job duties that would require climbing a ladder or scaffolding." (<u>Id.</u>; <u>see also</u> <u>DOT</u>, No. 301.687-010 (Caretaker), 1991 WL 672653 (G.P.O. 4th ed. rev. 1991).) Plaintiff further maintains that the <u>Selected Characteristics of Occupations Defined in the Revised [DOT]</u> ("<u>SCO</u>") "reveals that the position of Caretaker requires at least occasional climbing." (Docket Entry 12 at 5 n.1; <u>see also</u> <u>SCO</u>, Pt. A, § 05.12.18 (U.S. Dep't of Labor 1993).) In addition, Plaintiff notes that "[t]he [<u>DOT</u>'s] description of the particular occupation group ['Checkroom, Locker Room, and Rest Room Attendants'] indicates that the position of Change House Attendant is an occupation 'concerned with serving clients of checkrooms, locker

13

rooms or rest rooms' which suggests that these job duties would require interaction with the public." (Docket Entry 12 at 5 n.1 (quoting DOT, § 358, 1991 WL 672952).) Thus, Plaintiff contends (1) that both of those jobs (according to the DOT) conflict with the RFC, which allows no more than frequent exposure to atmospheric irritants and precludes climbing of ladders, ropes, or scaffolds, as well as public interaction (id. (citing Tr. 21)), and (2) that the ALJ erred by failing to identify and resolve the conflict between the DOT and the VE's testimony that, with such RFC, Plaintiff could perform those two jobs (id. at 5-6 n.1 (citing Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015)).

Assuming that the ALJ erred by failing to identify and resolve an apparent conflict between the DOT and the VE's testimony that, given the RFC, Plaintiff could perform the Caretaker and Change House Attendant jobs, any such error remains harmless under the circumstances of this case, because Plaintiff has not challenged the remaining job, Laundry Worker II. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As discussed above, the VE testified that 199,300 Laundry Worker II jobs existed in the national economy (see Tr. 57), which certainly constitutes a significant number, see, e.g., Weiler v. Apfel, 179

14

F.3d 1107, 1110-11 (8th Cir. 1999) ("The [VE's] testi[mony] that there are 32,000 . . . positions nationwide . . . is substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which [the plaintiff] can perform."); Patterson v. Astrue, Civ. No. 8:07-1602-HFF-BHH, 2008 WL 294461, at *5 (D.S.C. July 31, 2008) (unpublished) ("[T]he VE testified that 28,000 . . . jobs appeared in the national economy. This testimony was substantial evidence for the ALJ to conclude that the . . . job appeared in significant numbers." (internal citation omitted)).[7]

Although Plaintiff points out that "the job of Laundry Worker II requires frequent exposure to humidity and extreme heat" (Docket Entry 12 at 5 n.1 (referencing DOT, No. 361.685-018 (Laundry Worker II), 1991 WL 672987)), she made no further argument regarding the Laundry Worker II job (see id. ("The ALJ in [Plaintiff's] claim failed to identify and resolve the apparent conflicts between the ALJ's RFC and the VE's testimony that [Plaintiff] could perform the jobs of Caretaker and Change House Attendant." (emphasis added)). The Court thus need proceed no further. See Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief ."); United States v. Zannino, 895 F.2d 1,

---

[7] The hearing transcript reflects that the VE testified to "199,300" Laundry Worker II jobs nationally (Tr. 57), but the ALJ's decision sets that number at "1,099,300" (Tr. 26). That disparity does not impact the outcome of this case because, as noted above, 199,300 jobs qualifies as a significant number.

15

17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). In any event, neither frequent exposure to humidity nor frequent exposure to extreme heat conflicts with the RFC. (See Tr. 21.)

Accordingly, Plaintiff's second assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 20, 2017